**FILED**

JAN 1 8 2008

**NANCY MAYER WHITTINGTON, CLERK**
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

RICHARD M. HARRIS, DS-6687
SCI-Smithfield    Plaintiff,
P.O. Box 999
1120 Pike St    vs.
Huntingdon, PA 16652

  : Civil Action No._____

  : JURY TRIAL DEMANDED

UNITED STATES DEPARTMENT OF
JUSTICE; UNITED STATES CENTRAL
INTELLIGENCE AGENCY; ALBERTO
GONZALES, Fmr. U.S. Attorney
General; JACK KEMP, Fmr. Secretary
of Housing and Urban Development;
JOHN DOE 1; JOHN DOE 2; HARRY
SULLIVAN, JR.; EDDIE SULLIVAN;
DERRICK KIRBY; TOMMY ZURITA; FARID
RASHID; MICHELLE A. CARTER; TRACIE
MITCHELL; JENSEN BARBER; EUGENE
JONES; C.O. RAKUS, Correctional
Officer at the State Correctional
Institution at Mahanoy; GERALD
GAVIN, Intelligence Captain at the
State Correctional Institution at
Mahanoy; WILLIAM WETZL, Lieutenant
at the State Correctional
Institution at Mahanoy; MR. KANE,
Hearings Examiner at the State
Correctional Institution at
Mahanoy; EDWARD MARTIN,
Superintendent's Assistant at the
State Correctional Institution at
Mahanoy; and JEFFREY BEARD,
Secretary of the Pennsylvania
Department of Corrections;
individually and in their official
capacities,

    Defendants.

Case: 1:08-cv-00113
Assigned To : Sullivan, Emmet G.
Assign. Date : 1/18/2008
Description: Pro Se General Civil

JURY ACTION

**RECEIVED**

JAN 0 2 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**CIVIL ACTION COMPLAINT**

*1*

## I. Preliminary Statement.

1. This is a civil rights action filed by Richard M. Harris ("Harris") seeking monetary damages for physical and emotional injuries sustained by him as a result of a criminal and civil conspiracy between several current and/or former federal government employees and members of an inter-state narcotics distribution ring with ties to former D.C. area drug kingpins Rayful Edmond III, Melvin Butler, and Tony Lewis.

2. The Complaint alleges that these individuals conspired together, in violation of 18 U.S.C. §1503 and 42 U.S.C. §1985(2), to use threats and violence against Harris for the purpose of: (a) deterring him from freely and truthfully testifying before grand juries of the D.C. Superior Court and the United States District Court for the District of Columbia concerning their illegal activities and/or the illegal activities of their family members and friends; and (b) retaliating against him for having appeared before those grand juries. The Complaint further alleges that in furtherance of that conspiracy the participants in it employed various methods to obtain confidential information about Harris and arranged two violent attacks upon him.

3. Harris's Complaint asserts claims against the conspirators for violation of his right to due process and for violation of the civil rights conspiracy provisions of 42 U.S.C. §1985(2). It also raises various tort claims against them under the laws of the District of Columbia.

4. Additionally, the Complaint raises constitutional claims against officials of the Pennsylvania Department of Corrections

-1-

based upon their failure to protect Harris from the above-mentioned attacks and for interfering with his access to the courts.

5. Harris is seeking monetary damages in an aggregate amount of $1,000,000.

## II. Jurisdiction.

6. This Court has jurisdiction over Harris's claims of constitutional violation and violation of 42 U.S.C. §1985(2) pursuant to 28 U.S.C. §1331 (federal question). The Court has jurisdiction over Harris's related tort claims pursuant to both 28 U.S.C. §1332(a)(1) (diversity and amount) and 28 U.S.C. §1336 (supplemental jurisdiction).

7. The Court has jurisdiction over Harris's claims with respect to the United States Department of Justice and the United States Central Intelligence Agency pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C. §§1346(b), 1402(b), 2401(b), and 2671-2680.

## III. Parties.

8. Plaintiff Richard M. Harris is a resident of the State of Maryland confined at the State Correctional Institution at Smithfiled ("SCI-Smithfield") located at P.O. Box 999, 1120 Pike Street, Huntingdon, PA 16652.

9. The United States Department of Justice ("DoJ") is an agency within the Executive Branch of the United States government responsible primarily with the enforcement of federal civil and criminal law and the legal representation of Executive Branch agencies. The DoJ is comprised of various components that include

-2-

the Office of the United States Attorney for the District of Columbia and the Federal Bureau of Investigation. The DoJ is made a defendant to this action by virtue of the Federal Tort Claims Act.

10. The United States Central Intelligence Agency ("CIA") is an agency within the Executive Branch of the United States government responsible for foreign intelligence gathering and foreign counter-intelligence activities. The CIA is made a defendant to this action by virtue of the Federal Tort Claims Act.

11. Defendant Alberto Gonzales is a resident of the State of Texas and former United States Attorney General whose address is unknown at this time. On information and belief, defendant Gonzales was acting within the scope of his employment with the DoJ at all times relevant to this Complaint. Defendant Gonzales is sued in both his individual and official capacities.

12. Defendant Jack Kemp is a resident of the Commonwealth of Virginia and former Secretary of Housing and Urban Development ("HUD") whose address is unknown at this time. Defendant Kemp is sued in his individual capacity.

13. Defendant John Doe 1 is an individual whose identity is unknown. On information and belief, John Doe 1 is an employee of the DoJ working within either the Office of the United States Attorney for the District of Columbia or the Federal Bureau of Investigation. On information and belief, defendant John Doe 1 was acting within the scope of his or her employment with the DoJ at all times relevant to this Complaint. Defendant John Doe 1

is sued in both his or her individual and official capacities.

14. Defendant John Doe 2 is a resident of the Commonwealth of Virginia named [        Redacted        ] whose address is unknown at this time. On information and belief, John Doe 2 is [
              Redacted                    ] and a current or former employee of the CIA or DoJ. On information and belief, defendant John Doe 2 was acting within the scope of his employment with CIA or DoJ at all times relevant to this Complaint. Defendant John Doe 2 is sued in both his individual and official capacities.

15. Defendant Harry Sullivan, Jr. is a resident of the District of Columbia whose last known address is 1307 Saratoga Avenue, N.E., Washington, D.C. 20018. Defendant Harry Sullivan, Jr. is sued in his individual capacity.

16. Defendant Eddie Sullivan is a resident of the District of Columbia whose last known address is 9 Bass Circle, S.E., Apt. #202, Washington, D.C. 20019. Defendant Eddie Sullivan is sued in his individual capacity.

17. Defendant Derrick Kirby is a resident of the District of Columbia whose last known address is 2141 35th Place, S.E., Washington, D.C. 20020. Defendant Kirby is sued in his individual capacity.

18. Defendant Tommy Zurita is a resident of the Commonwealth of Virginia whose address is unknown at this time. Defendant Zurita is sued in his individual capacity.

19. Defendant Farid Rashid is a resident of the Commonwealth of Virginia whose address is unknown at this time. Defendant Rashid is sued in his individual capacity.

-4-

20. Defendant Michelle A. Carter is a resident of the District of Columbia whose last known address is 522 50th Place, N.E., Washington, D.C. 20019. Defendant Carter is sued in her individual capacity.

21. Defendant Tracie Mitchell is a resident of the District of Columbia whose last known address is 518 50th Place, N.E., Washington, D.C. 20019. Defendant Mitchell is sued in her individual capacity.

22. Defendant Jensen Egerton Barber is a resident of the Commonwealth of Virginia and prominent D.C. area criminal defense attorney whose offices are located at the Jenifer Building, Suite 400, 400 Seventh Street, N.W., Washington, D.C. 20004-2206. Defendant Barber is sued in his individual capacity.

23. Defendant Eugene Jones is a resident of the District of Columbia whose address is unknown at this time. Defendant Jones is sued in his individual capacity.

24. Defendant C.O. Rakus is a resident of the Commonwealth of Pennsylvania employed as a Correctional Officer at the State Correctional Institution at Mahanoy located at 301 Morea Road, Frackville, PA 17932. Defendant Rakus is sued in both his individual and official capacities.

25. Defendant Gerald Gavin is a resident of the Commonwealth of Pennsylvania employed as an Intelligence Captain at the State Correctional Institution at Mahanoy located at 301 Morea Road, Frackville, PA 17932. Defendant Gavin is sued in both his individual and official capacities.

26. Defendant William Wetzl is a resident of the Commonwealth

-5-

of Pennsylvania employed as a Correctional Lieutenant at the State Correctional Institution at Mahanoy located at 301 Morea Road, Frackville, PA 17932. Defendant Wetzl is sued in both his individual and official capacities.

27. Defendant Mr. Kane is a resident of the Commonwealth of Pennsylvania employed as a Hearings Examiner at the State Correctional Institution at Mahanoy located at 301 Morea Road, Frackville, PA 17932. Defendant Kane is sued in both his individual and official capacities.

28. Defendant Edward Martin is a resident of the Commonwealth of Pennsylvania employed as the Superintendent's Assistant at the State Correctional Institution at Mahanoy located at 301 Morea Road, Frackville, PA 17932. Defendant Martin is sued in both his individual and official capacities.

29. Defendant Jeffrey Beard is a resident of the Commonwealth of Pennsylvania employed as the Secretary of the Pennsylvania Department of Corrections whose offices are located at 2520 Lisburn Road, Camp Hill, PA 17011. Defendant Beard is sued in both his individual and official capacities.

IV. Statement Of Claims.

### COUNT I

(Civil Conspiracy In Violation Of 42 U.S.C. §1985(2))

**A. A Brief History Of The Relationship Between D.C. Area Drug Kingpin Rayful Edmond III And Defendants Jack Kemp, John Doe 2, Harry Sullivan, Jr., Derrick Kirby, Michelle Carter, Tommy Zurita, and Farid Rashid.**

30. In the mid to late 1980's, the use of "Crack" cocaine reached epidemic proportions in the United States. The problem was particularly acute in and around the District of Columbia.

--6--

31. At the time, the cocaine trade in the D.C. Metropolitan area was controlled largely by a narcotics distribution ring led by D.C. area drug kingpin Rayful Edmond III. The ring led by Edmond consisted of a close-knit group of Edmond family members and friends operating primarily out of the Northeast section of the city. However, the group had extensive national and international connections through which it purchased hundreds of millions of dollars worth of cocaine and heroin that it eventually distributed throughout the District of Columbia, Maryland, and Virginia.

32. Among Edmond's many associates were defendants Kemp, John Doe 2, and Harry Sullivan, Jr. -- all of whom had become friends of Edmond and his family while living in Northeast, D.C.

33. Harris's mother has been familiar with many of Edmond's associates since the early 1970's. This is particularly true with respect to defendant Kemp. In fact, for several years, Harris's mother was employed by defendant Kemp as a domestic servant and was quite friendly with both him and his family.

34. Moreover, Harris, who during his childhood frequently accompanied his mother to work in the Kemp home, also became familiar with defendant Kemp. And, in 1984, as a result of his mother's connections to defendant Kemp and his family, Harris came to know another associate of Edmond and his family: Derrick Kirby. In fact, Harris and defendant Kirby ultimately became good friends.

35. Defendant Kirby and his family had extensive ties to Edmond and the members of his narcotics distribution ring. Indeed,

-7-

between 1987-89, the home of Kirby's mother became a frequent hang-out for Edmond and various others associated with him and his drug distribution network, including, but not limited to, Melvin Butler, Tony Lewis, John Doe 2, and defendant Harry Sullivan, Jr.

36. Harris and defendant Kirby remained good friends throughout the latter part of the 1980's. However, in 1988, Harris was arrested and convicted on a charge of robbery in the Commonwealth of Virginia. Yet, following Harris's arrest, defendant Carter -- who at the time was Harris's girlfriend and fiance' -- continued to maintain a close relationship with defendant Kirby and his younger sister, LaVada Benson. And, as a result, defendant Carter also became close friends with Edmond and the various members of his family and drug distribution ring.

37. In early 1989, Edmond and most of his immediate family and friends were indicted on a wide range of federal criminal offenses that included murder, conspiracy to distribute vast quantities of cocaine, and participating in a continuing criminal enterprise. Edmond and his closest associates were ultimately convicted and sentenced to life in prison. Most of the remaining members of the ring were also convicted and sentenced to lengthy prison terms.[1]

38. However, Edmond and his associates continued their drug

---

[1] On information and belief, although involved, defendant John Doe 2 was never charged in connection with the narcotics distribution activities of Edmond and his associates. And, on information and belief, defendant Harry Sullivan, Jr. was tried and convicted as a juvenile following an unsuccessful attempt by the Government to have him transferred for adult prosecution.

-8-

distribution activities even _after_ being sentenced to federal prison. Moreover, defendant Carter, who had maintained close relationships with many of Edmond's unincarcerated associates such as defendants Kirby, John Doe 2, and Harry Sullivan, Jr., as well as various family members of Edmond's co-defendants Columbus Daniels and Melvin Stewart, began actively participating in the rings illicit activities.

**B. The Conspiracy To Deter Harris From Testifying Before The Grand Jury And To Harm Him Or His Family For Having Appeared Before It.**

39. Later, in 1998-99, The Office of the United States Attorney for the District of Columbia opened an investigation into a plot to murder a witness in the D.C. Superior Court criminal case of United States v. Tommy Zurita and Farid Rashid, Case Nos. F-015-98 and F-937-98. The primary targets or persons of interest with respect to that investigation were defendants Kirby, Zurita, Rashid, and Eddie Sullivan.[2]

40. Harris and defendant Carter had recently married and were friends of defendants Kirby, Zurita, Rashid, and Eddie Sullivan. Indeed, at the time, unbeknownst to Harris, defendant Carter was romantically and sexually involved with these individuals -- a relationship that she secretly continued to maintain with them even after being made aware by both Harris and federal authorities of the ongoing investigation into their

---

[2] There is some information which suggests that the individual who Harris knew as "Eddie" Sullivan may actually have been Harry Sullivan, Jr. using another name to disguise his true identity. However, at this time, Harris is unable to confirm the accuracy of that information.

efforts to kill a witness.

41. Thus, during the course of the federal investigation into the murder-for-hire plot, Harris and defendant Carter were called upon by the Government to testify before grand juries of the D.C. Superior Court and the United States District Court for the District of Columbia.

42. Harris and defendant Carter each made appearances before the grand jury in connection with the above-mentioned investigation.

43. Harris was represented in connection with his grand jury appearances by defendant Barber -- a close friend of John Doe 2 and Harry Sullivan, Jr.; and attorney for Rayful Edmond's brother, Emmanuel Sutton.[3]

44. Defendant Carter appeared and testified before a D.C. Superior Court grand jury -- although it is Harris's understanding that she provided materially false and misleading information to the grand jury with respect to the subject(s) of its investigation.

45. On the other hand, seeking to protect defendant Carter and the couple's three children from any possible retaliation, Harris refused to provide any testimony before the grand jury. And, as a result, Harris was held in contempt at the D.C. Jail

---

[3]  [Redacted]

- 10 -

from approximately January of 1999 to May of 2001.

46. Nevertheless, despite the fact Harris had refused to testify before the grand jury, defendants Kirby, Zurita, Rashid, and Eddie Sullivan apparently <u>believed</u> that Harris had either provided or was intending to provide incriminating testimony or other evidence against them and/or their family members and friends.

47. Consequently, on information and belief, defendants Kirby, Zurita, Rashid, and Eddie Sullivan -- acting within the District of Columbia -- entered into a criminal and civil conspiracy in violation of both 18 U.S.C. §1503 and 42 U.S.C. §1985(2) to:

> a) deter Harris, by means of threats, intimidation, and violence, from testifying freely and truthfully before the grand juries of the D.C. Superior Court and the United States District Court for the District of Columbia concerning his knowledge of their unlawful activities and/or the unlawful activities of their family members, friends, and associates; and
>
> b) physically harm Harris and/or members of his family for his having appeared before the above-mentioned grand juries.

48. On information and belief, defendants Kirby, Zurita, Rashid, and Eddie Sullivan formed the above-described conspiracy in or around May of 1998 and it has continued to the present.

49. On information and belief, the conspiracy has not remained confined to defendants Kirby, Zurita, Rashid, and Eddie Sullivan.

50. On information and belief, the conspiracy grew within a period of months to include defendants Harry Sullivan, Jr., Kemp, Carter, Mitchell, John Doe 1, John Doe 2, Barber, and Jones. And, on information and belief, in early 2006, the conspiracy

also came to include defendant Gonzales.

51. On information and belief, during the course of the conspiracy, defendants Kirby, Zurita, Rashid, Eddie Sullivan, Harry Sullivan, Jr., Kemp, Carter, Mitchell, John Doe 1, John Doe 2, Barber, Jones, and Gonzales all carried-out various overt acts in furtherance of the objectives of the conspiracy, including, but not necessarily limited to, those acts described below.

### C. Overt Acts In Furtherance Of The Conspiracy.

#### Surreptitious And Unlawful Information Gathering

52. To begin, the above-mentioned defendants embarked upon a sophisticated effort to learn the details of the Government's investigation into their activities and to determine Harris's role (if any) in that investigation.

53. A key component of that effort was the recruitment of defendants Carter and Mitchell into the conspiracy. Defendant Carter had recently married Harris and was in a unique position to obtain information from and about her husband. And, as one of defendant Carter's best friends, defendant Mitchell was in a similarly unique position to obtain information.

54. On information and belief, defendants Kirby, Zurita, Rashid, and Eddie Sullivan accomplished the recruitment of defendants Carter and Mitchell by, among other things, providing them with substantial sums of cash and other valuable inducements such as jewelry, home furnishings, motor vehicles, trips, and/or drugs.

55. On information and belief, defendants Kemp and Kirby

-12-

also assisted in the recruitment of defendants Carter and Mitchell by utilizing influence and connections gained by them during their employment with D.C. Public Housing and HUD to arrange for both Carter and Mitchell to be relocated (ahead of other tenets already on the waiting list) from small apartment units within the Lincoln Heights Public Housing Projects to substantially larger single family homes located at 518 and 522 50th Place, N.E.

56. Upon joining the conspiracy, defendants Carter and Mitchell immediately began gathering and secretly providing the other conspirators with information concerning the Government's investigation and about Harris.

57. Indeed, during the nearly two-year period between 1999 and 2001 when her husband was being held at the D.C. Jail in connection with his refusal to testify before the grand jury, defendant Carter -- acting in furtherance of the conspiracy and at the specific directions of her co-conspirators -- routinely visited Harris for the sole purpose of gathering information concerning the Government's investigation and whether Harris was cooperating with federal authorities.

58. Defendant Carter also provided her co-conspirators with access to Harris's mail and allowed them to secretly listen in on private conversations between her and Harris.

59. In addition, defendant Carter also made numerous visits to Harris's mother and brothers for the purpose of uncovering what information (if any) they had concerning the Government's investigation.

60. Defendant Mitchell undertook similar actions to obtain information from and about Harris, including, but not limited to, visiting him at the D.C. Jail for the purpose of learning whether he was cooperating with federal authorities.

61. Defendants Carter and Mitchell also assisted defendants Kirby, Zurita, Rashid, and Eddie Sullivan by placing them in contact with friends incarcerated at the same institution where Harris was confined for the purpose of "keeping tabs" on him and ultimately for the purpose of arranging an attack upon him. Specifically, on information and belief, in 2001-2002, defendants Carter and Mitchell placed their co-conspirators in contact with Pennsylvania Department of Corrections inmates Michael Irving, Raymond Clark, Anthony Bowie, and Edward Powell.

62. The effort to obtain information concerning the Government's investigation and Harris's possible role in it was not confined to the actions of defendants Carter and Mitchell. It also included defendants John Doe 1, John Doe 2, and Gonzales.

63. On information and belief, during the course of the conspiracy, defendants John Doe 1, John Doe 2, and Gonzales utilized their official positions with the DoJ and CIA to unlawfully obtain and pass on to their co-conspirators confidential information concerning Harris and his family, including, but not limited to, information obtained from:

a) files of the Federal Bureau of Investigation ("FBI") and in particular FBI file nos. [Redacted]

b) files of the Office of the United States Attorney for the District of Columbia and/or the DoJ;

-14-

c) Government electronic and other surveillance of Harris and his wife, defendant Carter; and

d) an address book seized from Harris's personal property by the FBI during the course of the investigation.

64. The most insidious method employed by the conspirators to obtain information about Harris was the use of his attorney, defendant Barber. As mentioned above, defendant Barber was a close friend of defendants John Doe 2 and Harry Sullivan, Jr.; and counsel to Rayful Edmond's brother, Emmanuel Sutton. However, although representing Harris in connection with a federal investigation focusing on the activities of close associates of Edmond (Eddie Sullivan and Derrick Kirby), defendant Barber did not disclose to Harris either his personal relationship with defendant John Doe 2 or his representation of Edmond's brother.

65. Moreover, on information and belief, in an effort to protect defendants John Doe 2 and Harry Sullivan, Jr., and/or other friends and family members of Edmond, defendant Barber joined the conspiracy to deter Harris from testifying in connection with the federal investigation of the murder-for-hire plot. And, in furtherance of the objectives of the conspiracy, defendant Barber supplied the various other participants in the conspiracy with confidential and privileged attorney-client information concerning the investigation and the Government's efforts to secure Harris's cooperation and testimony.

### Intimidation And Acts Of Violence Towards Harris

66. The participants in the conspiracy also resorted to intimidation and acts of violence in their efforts to both deter Harris from testifying before the grand jury and to retaliate

-15-

against him for having even appeared before it.

67. Indeed, although Harris had refused to testify before the grand jury or otherwise cooperate in connection with the Government's investigation, defendants Kirby, Zurita, Rashid, Eddie Sullivan, Harry Sullivan, Jr., John Doe 2, Kemp, Carter, Mitchell, and Jones nonetheless orchestrated two violent attacks upon Harris and an attempted kidnapping of his younger brother.

68. First, in or about October of 2000, defendants Kirby, Zurita, Rashid, Eddie Sullivan, Harry Sullivan, Jr., John Doe 2, Kemp, Carter, Mitchell, and Jones -- acting through associates who were confined at the D.C. Jail -- arranged for Harris to be threatened and stabbed by inmates at that facility. And, as a result, Harris sustained serious and irreparable physical injury and emotional distress.

69. Second, in or about November of 2006, while Harris was confined at the State Correctional Institution at Mahanoy ("SCI-Mahanoy") located in Frackville, Pennsylvania, defendants Kirby, Zurita, Rashid, Eddie Sullivan, Harry Sullivan, Jr., John Doe 2, Kemp, Carter, Mitchell, and Jones attempted to lure Harris's younger brother, A.H., into a location where they could kidnap and kill or otherwise harm him by offering to arrange transportation for him to Pennsylvania for the purpose of visiting Harris.

70. Third, on January 31, 2007, defendants Kirby, Zurita, Rashid, Eddie Sullivan, Harry Sullivan, Jr., John Doe 2, Kemp, Carter, Mitchell, and Jones arranged a second violent assault upon Harris at SCI-Mahanoy.

**D. Exhaustion Of Administrative Remedies Under The Federal Tort Claims Act.**

71. On March 20, 2007, Harris presented an administrative tort claim under the Federal Tort Claims Act to both the DoJ and CIA concerning the actions of their employees outlined above.

72. On September 20, 2007, the CIA denied Harris's claims. Notice of that denial was mailed on September 24, 2007, and received by Harris on September 28, 2007.

73. However, more than six months have elapsed since Harris filed his administrative claims and the DoJ has not responded.

## COUNT II

### (Denial Of Due Process In Violation Of U.S. Const. Amend V)

74. The allegations set forth in paragraphs 1 through 73, supra, are hereby incorporated as if fully set forth herein.

75. The actions of defendants Gonzales, Kemp, John Doe 1, John Doe 2, Harry Sullivan, Jr., Eddie Sullivan, Kirby, Zurita, Rashid, Carter, Mitchell, Barber, and Jones were carried-out under color of federal law and in violation of Harris's right to Due Process of Law as guaranteed by the Fifth Amendment to the United States Constitution. And, as a result of those actions, Harris sustained serious and irreparable physical injury and emotional distress.

## COUNT III

### (Tortious Intentional Infliction Of Emotional Distress)

76. The allegations set forth in paragraphs 1 through 73, supra, are hereby incorporated as if fully set forth herein.

77. The actions of defendants Gonzales, Kemp, John Doe 1, John Doe 2, Harry Sullivan, Jr., Eddie Sullivan, Kirby, Zurita,

-17-

Rashid, Carter, Mitchell, Barber, and Jones were outrageous and done intentionally for the purpose of inflicting physical harm and emotional distress upon Harris in violation of the laws of the District of Columbia. And, as a result of those actions, Harris sustained serious and irreparable physical injury and emotional distress.

## COUNT IV

### (Tortious Invasion Of Privacy)

78. The allegations set forth in paragraphs 1 through 73, supra, are hereby incorporated as if fully set forth herein.

79. The actions of defendants Gonzales, Kemp, John Doe 1, John Doe 2, Harry Sullivan, Jr., Eddie Sullivan, Kirby, Zurita, Rashid, Carter, Mitchell, Barber, and Jones in surreptitiously and unlawfully obtaining confidential information concerning Harris and his family were undertaken intentionally and constituted an unwarranted invasion of Harris's personal privacy in violation of the laws of the District of Columbia. And, as a result of those actions, Harris suffered embarrassment, humiliation, emotional distress, and physical injury.

## COUNT V

### (Violation Of The Privacy Act, 5 U.S.C. §522(a))

80. The allegations set forth in paragraphs 1 through 73, supra, are hereby incorporated as if fully set forth herein.

81. On information and belief, the successful efforts of the various conspirators in obtaining the confidential federal agency records outlined above was not the first time that individuals associated with the conspiracy had unlawfully obtained

-19-

access to such records relating to Harris and members of his family. In fact, on information and belief, certain members of the conspiracy have unlawfully obtained federal agency records concerning Harris on at least two (2) occasions <u>prior</u> to the formation of the conspiracy.

82. During his preparation for the filing of this action, Harris submitted a request to the FBI under both the Freedom of Information and Privacy Acts ("FOIPA"), 5 U.S.C §§522 and 522(a), for certain records relating to himself.

83. Harris's FOIPA request was assigned no. 1076068-000.

84. On July 31, 2007, the FBI responded to Harris's request and produced a redacted copy of FBI file no. [Redacted].

85. The records produced by the FBI bear notations reflecting two separate disclosures of both photographs and records relating to Harris that were contained in the above-mentioned FBI file.

86. The first of the two disclosures occurred on March 24, 1991, in response to an "NC" or name check request made by "DIS" -- a person or agency unknown to Harris.

87. The second disclosure occurred between August 9th and August 12th of 1991, in response to a similar "name check" request made by "OPM" or the federal Office of Personnel Management.

88. On information and belief, there existed no lawful purpose for the two disclosures described above.

89. Harris is unaware of any person or agency with the initials "DIS". And, he has never applied for federal government employment or for access to sensitive or classified information such as to require a background or name check by OPM or any other

government agency.

90. Moreover, on information and belief, Harris has no family members (immediate or distant) who have ever been employed by the federal government, or who have applied for either federal government employment or for access to sensitive or classified information such as to require a background or name check on Harris by OPM or any other government agency.

91. On information and belief, the two disclosures described above were the result of pretextual "name check" requests filtered through "DIS" and "OPM" by friends or associates of defendants John Doe 1 and/or John Doe 2 working at those agencies for the purpose of fraudulently and unlawfully obtaining confidential FBI records relating to Harris.

92. The actions of defendants John Doe 1 and John Doe 2 in obtaining the above-described records constituted an unwarranted invasion of Harris's personal privacy in violation of the provisions of the Privacy Act, 5 U.S.C. §522(a).

## COUNT VI

## Professional Malpractice -- Legal)

93. The allegations set forth in paragraphs 1 through 73, supra, are hereby incorporated as if fully set forth herein.

94. At all times relevant to this Complaint, defendant Barber owed Harris a professional duty of loyalty arising from his agreement to serve as Harris's legal counsel in connection with the government's investigation into the murder-for-hire plot described above.

95. Defendant Barber also owed Harris the related

professional duties to remain free conflicts-of-interest and to protect Harris secrets and confidences.

96. On information and belief, defendant Barber breached the above-described duties which he owed Harris by:

a) failing to disclose to Harris the personal relationships between himself and defendants John Doe 2 and Harry Sullivan, Jr., and his representation of Rayful Edmond's brother, Emmanuel Sutton;

b) continuing to represent Harris despite his personal relationship with defendants John Doe 2 and Harry Sullivan, Jr., and his representation of Emmanuel Sutton;

c) joining the conspiracy to deter Harris from testifying in connection with the Government's investigation; and

d) disclosing confidential and privileged attorney-client information to the members of the conspiracy.

97. The actions and omissions of defendant Barber in breaching the above-described professional duties were in violation of the laws of the District of Columbia. And, as a result of those actions and omissions, Harris sustained serious and irreparable physical injury and emotional distress.

## COUNT VII

## (Cruel And Unusual Punishment In Violation Of U.S. Const. VIII)

98. The allegations set forth in paragraphs 1 through 73, supra, are hereby incorporated as if fully set forth herein.

99. On or about January 6, 2007, after being threatened by defendant Jones, Harris learned that Jones and the other conspirators were attempting to have him stabbed by a group of inmates at SCI-Mahanoy led by Raymond Clark -- one of the friends of defendants Carter and Mitchell mentioned above.

100. Harris immediately informed defendant Rakus of both

-21-

the threats and of the efforts of defendants Jones and the other conspirators to orchestrate an attack upon him. Harris requested protection.

101. However, instead of providing Harris with protection, defendant Rakus informed Harris that there was nothing he could do because SCI-Mahanoy did not provide protective custody. Harris was effectively <u>forced</u> into refusing to lock-up and being placed in disciplinary custody in the facility's Restricted Housing Unit ("RHU") in order to avoid being stabbed by Clark and the other inmates who defendant Jones had put up to attacking him.

102. Over a nearly three-week period between January 6th and January 26th, while in the RHU, Harris wrote and spoke to numerous prison employees concerning the efforts of defendant Jones and the other conspirators to have him stabbed or otherwise attacked. Among those who Harris personally wrote and spoke to about the situation were defendants Gavin, Wetzl, Kane, and Martin.

103. Harris also wrote defendant Beard. And, on information and belief, Harris's mother also contacted defendant Beard by both mail and telephone informing him of the situation.

104. Nevertheless, despite being informed of the efforts of defendants Jones and the other conspirators to have Harris attacked, defendants Rakus, Gavin, Wetzl, Kane, Martin, and Beard failed to take <u>any</u> actions to protect Harris. In fact, on January 26, 2007, Harris, over his objections, was released back into the prison's general population and ordered to return to the very same cell-block where he was previously housed.

105. On January 31, 2007, only five (5) days after being released back into the general population, Harris was brutally assaulted by SCI-Mahanoy inmate Terrance Wells -- a friend of Raymond Clark from Philadelphia, Pennsylvania.

106. On information and belief, the attack upon Harris was arranged and orchestrated by defendants John Doe 2, Harry Sullivan, Jr., Eddie Sullivan, Kirby, Rashid, Carter, Mitchell, and Jones.

107. The actions and omissions of defendants Rakus, Gavin, Wetzl, Kane, Martin, and Beard in failing to provide Harris with protection from the above-mentioned assault manifested a deliberate indifference to a known risk of harm in violation of Harris's right to be free from cruel and unusual punishment as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution. And, as a result of those actions and omissions, Harris sustained serious and irreparable physical injury and emotional distress.

## COUNT VIII

### (Denial of Access To Courts -- U.S. Const. Amend. I)

108. The allegations set forth in paragraphs 1 through 73 and 98 through 107, supra, are hereby incorporated as if fully set forth herein.

109. Following the assault upon him on January 31, 2007, Harris was again placed in the facility's RHU. And, while in the RHU, Harris attempted to file numerous inmate grievances concerning the failure of defendants Rakus, Gavin, Wetzl, Kane, Martin, and Beard to protect him from the attack which Harris

-23-

had informed them was imminent.

110. However, most of the grievances submitted by Harris never reached the intended recipient: defendant Martin.

111. On information and belief, the grievances submitted by Harris were destroyed by officers in the RHU acting upon the directions of defendants Gavin, Wetzl, and Martin.

112. Moreover, those grievances which were received by defendant Martin were never filed or processed in accordance with the applicable policies and procedures of the Pennsylvania Department of Corrections.

113. On information and belief, the destruction of Harris's grievances and the failure of defendant Martin to process the ones received by him was intentional and designed to interfere with Harris's access to the courts by impeding his ability to exhaust administrative remedies.

114. The actions and omissions of defendants Gavin, Wetzl, and Martin in ordering Harris's grievances destroyed and in failing to properly file and process grievances received by them violated Harris's right to access to the courts as guaranteed by the First and Fourteenth Amendments to the Constitution.

**V. Relief Requested.**

115. WHEREFORE, Harris requests that this Court enter judgment in his favor and against the defendants and award damages in the following amounts:

> a) $250,000, jointly and severally, against defendants DoJ, CIA, Alberto Gonzales, Jack Kemp, John Doe 1, and John Doe 2;

b) $500,000, jointly and severally, against defendants Harry Sullivan, Jr., Eddie Sullivan, Derrick Kirby, Tommy Zurita, Farid Rashid, Michelle Carter, Tracie Mitchell, Jensen Barber, and Eugene Jones; and

c) $250,000, jointly and severally, against defendants C.O. Rakus, Gerald Gavin, William Wetzl, Mr. Kane, Edward Martin, and Jeffrey Beard.

Respectfully Submitted,

Richard M. Harris
Plaintiff

Richard M. Harris #DS-6687
SCI-Smithfield
P.O. Box 999, 1120 Pike Street
Huntingdon, PA  16653

## Verification

I, Richard M. Harris, hereby declare under penalty of perjury that the statements and facts set forth herein are true and correct to the best of my knowledge, information, and/or belief.

Richard M. Harris

Executed on: 12/27/07

-26-

## SERVICE INFORMATION

The plaintiff and defendants in this matter can be served at the addresses below:

### Plaintiff's Address

Richard M. Harris #DS-6687
SCI-Smithfield
P.O. Box 999, 1120 Pike Street
Huntingdon, PA 16652

### Defendants' Addresses (where known)

United States Department of Justice
c/o United States Attorney for D.C.
555 Fourth Street, N.W.
Washington, D.C. 20001

United States Central Intelligence Agency
c/o United States Attorney for D.C.
555 Fourth Street, N.W.
Washington, D.C. 20001

Alberto Gonzales, Fmr. Attorney General
c/o United States Attorney for D.C.
555 Fourth Street, N.W.
Washington, D.C. 20001

Jack Kemp, Fmr. Sec. of HUD
c/o United States Attorney for D.C.
555 Fourth Street, N.W.
Washington, D.C. 20001

John Doe 1 (DoJ)
c/o United States Attorney for D.C.
555 Fourth Street, N.W.
Washington, D.C. 20001

John Doe 2 (CIA)
c/o United States Attorney for D.C.
555 Fourth Street, N.W.
Washington, D.C. 20001

Harry Sullivan, Jr.
1307 Saratoga Avenue, N.E.
Washington, D.C. 20018

Eddie Sullivan
9 Bass Circle, S.E., Apt. 202
Washington, D.C. 20019

Derrick Kirby
2141 36th Place, S.E.
Washington, D.C. 20020

Tommy Zurita
Current Address Unknown

Farid Rashid
Current Address Unknown

Michelle A. Carter
522 50th Place, N.E.
Washington, D.C. 20019

Tracie Mitchell
518 50th Place, N.E.
Washington, D.C. 20019

Jensen Egerton Barber
The Jenifer Building, Suite 400
400 Seventh Street, N.W.
Washington, 20004-2206

Eugene Jones
2309 Green Street, S.E., Apt. 1
Washington, D.C. 20020

CO Rakus
SCI- Mahanoy
301 Morea Road
Frackville, PA 17932

Gerald Gavin
SCI-Mahanoy
301 Morea Road
Frackville, PA 17932

William Wetzl
SCI-Mahanoy
301 Morea Road
Frackville, PA 17932

Mr. Kane
SCI-Mahanoy
301 Morea Road
Frackville, PA 17932

Edward Martin
SCI-Mahanoy
301 Morea Road
Frackville, PA 17932

Jeffrey Beard
Pennsylvania Department of Corrections
2520 Lisburn Road
Camp Hill, PA 17011

08 - 113
EGS

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| RICHARD M. HARRIS | DOJ, ET AL |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
**(EXCEPT IN U.S. PLAINTIFF CASES)**

PRO SE PR

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

ATTOR

Case: 1:08-cv-00113
Assigned To : Sullivan, Emmet G.
Assign. Date : 1/18/2008
Description: Pro Se General Civil

JURY ACTION

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

⊙ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| ☐ A. Antitrust | ☐ B. Personal Injury/ Malpractice | ☐ C. Administrative Agency Review | ☐ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br><br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ☐ E. General Civil (Other) OR ⊙ F. Pro Se General Civil |
|---|

| | | | |
|---|---|---|---|
| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability<br><br>**Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157 | **Immigration**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus- Alien Detainee<br>☐ 465 Other Immigration Actions<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant | ☐ 871 IRS-Third Party 26 USC 7609<br><br>**Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc. | ☐ 460 Deportation<br>☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not Administrative Agency Review or Privacy Act)<br><br>— 0 — |

| ☐ **G.** *Habeas Corpus/ 2255*<br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ **H.** *Employment Discrimination*<br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **I.** *FOIA/PRIVACY ACT*<br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ **J.** *Student Loan*<br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ **K.** *Labor/ERISA (non-employment)*<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ **L.** *Other Civil Rights (non-employment)*<br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ **M.** *Contract*<br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ **N.** *Three-Judge Court*<br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ Multi district Litigation ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 USC 1983

**VII. REQUESTED IN COMPLAINT** CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    **DEMAND $**    Check YES only if demanded in complaint **JURY DEMAND** ◉ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instruction) ☐ YES ◉ NO If yes, please complete related case form.

**DATE** 1.18.08    **SIGNATURE OF ATTORNEY OF RECORD**

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd